# City of Scranton, Appellant, *v*. Whyte.

[Marked to be reported.]

*Constitutional law—Classification of cities—As to what classes of subjects constitutional—Grading and paving of streets—Act of May 23, 1889.*

The test by which is to be determined the constitutionality of a law relating to cities of a particular class is the subject-matter to which the law is applicable.    If it relates to subjects of municipal concern only, it is constitutional because operating upon all members of the class, and therefore a general law.    If it relates to subjects of a general, as distinguished from a municipal character, it is local and therefore invalid, although it may embrace all the members of a class.

The subject of the grading and paving of streets is clearly and exclusively one for municipal control.    The power to collect the cost of the work so done by any appropriate form of taxation is a municipal power.    Therefore an act upon this subject relating to one of the classes of cities is constitutional.

So far as such an act applies in such cases the regular and settled course of procedure, as for example, the filing of a lien for assessments, with the usual procedure thereunder, it does not offend against the constitution by providing for peculiar local procedure.

*Semble*, That any provision varying the usual course in such cases by providing a special period of limitation, duration of lien or similar special provision, would be unconstitutional.

The act of May 23, 1889, art. XV., P. L. 317, is not unconstitutional as a whole.    Whether certain of its provisions, for example, those providing

for the duration of a municipal lien, the effect of a sheriff's sale thereunder, etc., are unconstitutional, not decided.

Wyoming Street, 137 Pa. 494, distinguished.

Argued Feb. 26, 1892. Appeal, No. 291, Jan. T., 1892, by plaintiff, from decree of C. P. Lackawanna Co., April T., 1891, No. 587, discharging plaintiff's rule for judgment for want of a sufficient affidavit of defence. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Sci. fa. sur municipal lien.

In the opinion discharging the rule for judgment, the court below, GUNSTER, J., stated the facts as follows:

"This is a scire facias upon a municipal lien or claim for paving Adams avenue in front of the defendant's premises in the city of Scranton. It is alleged in the affidavit of defence that the pavement in question was laid in September, October and November, 1889; that it was laid by authority and in pursuance of an ordinance of the councils of said city, approved September 7, 1889; that said ordinance was passed and approved in accordance with the provisions of the act of assembly, entitled 'An Act providing for the incorporation and government of cities of the third class, approved May 23, 1889,' and that said act of assembly, especially article XV thereof, is a local and special law, and is therefore unconstitutional, and the ordinance and all proceedings had thereunder are void and of no effect. It is clear, and was admitted by counsel for both parties, that the sufficiency of the affidavit of defence depends upon the validity of the provisions of the act of 1889, which make claims of the kind in question liens, and which authorize proceedings by scire facias thereon. Can these provisions be sustained?

"The act of May 23, 1889, is applicable to cities of the third class, and to no others. Its title and its text make that too plain for argument. The constitution of 1874, article III, section 7, provides, among other things, that 'The general assembly shall not pass any local or special law authorizing the creation, extension or impairing of liens; regulating the affairs of counties, cities, townships, wards, boroughs or school districts; regulating the practice or jurisdiction of or changing the rules of evidence in any judicial proceeding or inquiry before courts,

aldermen, justices of the peace, sheriffs, commissioners, arbitrators, auditors, masters in chancery or other tribunals, or providing or changing methods for the collection of debts, or the enforcing of judgments, or prescribing the effect of judicial sales of real estate.' In the face of these prohibitions the twenty-first section of article XV of the act of 1889, provides that all special taxes levied, or assessments made for grading, macadamizing or paving any public street, lane or alley, or part thereof, etc., 'shall be and remain first liens on the respective pieces of land fronting on the streets in which the improvement is made, or on the land assessed for such improvement or benefits as the case may be, from the commencement of the improvement for which the assessments were made until six months after the completion of the work and no longer, unless a specification of lien be filed in the prothonotary's office of the county in which the city is located, in the city lien docket within said period. The prothonotary shall be allowed a fee of twenty-five cents for filing and entering a lien under the provisions of this act, to be taxed as part of the costs in the case. Such specification of lien shall be deemed sufficient if it designates the date and amount of assessment, the land assessed, and the name of the owner or reputed owner, and shall have the effect of extending such lien for a period of ten years from the date of entry, and shall be amendable at or before trial in such manner as will meet the facts and merits of the case, and said lien shall have priority to and shall be fully paid and satisfied before any other lien or incumbrance of whatsoever kind or nature with which the land assessed may become charged, and shall not be diverted by any judicial sale except as to such portion of the proceeds of the sale as may actually be applied for the payment of such lien.'

" The twenty-second section of article XV is as follows : ' Recovery may be had on claims for city taxes . . . . paving any public street, lane, alley, or part thereof, . . . . and all other matters that may be subject of claim, registered in pursuance of this act, and the laws and ordinances of any of said cities in the court of common pleas of the proper county, or before any magistrate having jurisdiction of the amount, by action at law to recover a general judgment against the owner or owners of the property upon which the assessments were

made, or proceedings thereon may be had by scire facias similar to the proceedings in the case of mechanics' claims; and claims so registered shall be prima facie evidence of the amount thereof, and of the same being due and owing, and of all matters therein set forth, and judgment shall be entered by default thereon, unless the defendant or defendants shall file his, her or their affidavit of defence, as required in cases where the plaintiff has filed his copy of the cause of action in such court, and the judgment and process thereon shall be with like effect as in other cases:

" ' Provided, That reference being made to the number and term to which, and the docket and page in which, such claim or claims are registered, in the præcipe instituting the suit, it shall not be necessary to file a copy of the same.

" ' And further provided, That where any real estate subject to such lien shall have been conveyed and deed recorded after the registry of such tax, the then owner shall be included in the process, and if any owner shall be omitted, such party may be brought in by a rule of the court, or alias scire facias on him, her, or them, to show cause why he, she, or they should not be made a party to such suit, on proof of service thereof judgment may be entered against such party in default of appearance or affidavit of defence as if originally a party to the suit.'

" The twenty-third section is as follows : ' A sale of any property under a writ of levari facias issued upon a judgment obtained upon any lien filed in pursuance of this act, whether the real owner be named or not, shall be deemed a proceeding in rem, and shall vest a good title in the purchaser to the property thus purchased,' etc.

" There can be no question but that the provisions of section twenty-one, quoted, were intended to, and do not only authorize the creation and extension of municipal liens in cities of the third class, but also the impairing of other liens in such cities by giving municipal liens priority over them ; that the provisions of section twenty-two regulate the practice and change the rules of evidence in courts having jurisdiction over cities of the third class, and that section twenty-three prescribes the effect of judicial sales on writs issued on judgments obtained upon municipal liens in cities of the third class.

" Counsel for plaintiff seeks to escape from the conclusion

that they are local and special by contending that our courts have already sustained the classification of the cities of the commonwealth, and legislation for each class when applicable to all the cities of a particular class. It is true, and I had occasion to say in Hand v. Mayor Fellows, that notwithstanding the prohibition in our fundamental law against local laws regulating the affairs of cities, a reasonable classification of the cities of the commonwealth, and appropriate legislation for all cities of each class, was sustained in Wheeler v. Philadelphia, 77 Pa. 338, and many subsequent cases. But such legislation has been and can be sustained only on the ground of necessity, and has been restricted to the exercise of the corporate powers possessed by the cities of the particular class to which the legislation relates, and to the number, character, powers and duties of the officers employed in the management of municipal affairs : Ruan Street, 132 Pa. 257 ; Weinman v. Railway Co., 118 Pa. 192; Wyoming Street, 137 Pa. 494; Pittsburgh's Petition, 138 Pa. 401."

After discussing the act and the authorities, the court discharged the rule.   Plaintiff appealed.

*Error assigned* was refusal to enter judgment upon the rule and discharging the rule.

*F. L. Hitchcock, I. H. Burns* with him, for appellant.—The constitutionality of an act similar to this was questioned and the act sustained in Reading v. Savage, 120 Pa. 206 ; 124 Pa. 328.

The question of constitutionality depends upon what are and what are not necessary corporate powers.   If the law " operates upon the exercise of some power or duty of a municipality of the given class, or relates to some subject within the purposes of classification, it is general, otherwise local." Wyoming Street, 137 Pa. 502.

It is idle to say that the power to make municipal assessments does not come within the constitutional prohibition, but that the power to enter liens for such assessments and enforce their collection is within such prohibition, because (*a*) the lien is an integral part of the assessment : Hammett v. Phila., 65 Pa. 147 ; Jenkintown Borough v. Church, 5 C. C. 585 ; McMasters v. Com., 3 Watts, 292 ; Borough v. Railroad Co., 138

Pa. 372 ; Phila. v. Jewell, 135 Pa. 329.   (*b*) The test is whether the law is a general or a local law, not whether its provisions could have been made applicable to all the cities of the commonwealth or not: Wyoming Street, 137 Pa. 502; Pittsburgh's Petition, 138 Pa. 401.

*H. M. Edwards*, for appellee.—Sections 21, 22 and 23 of article XV of the act of 1889 are palpable violations of the constitution.   (1) Liens are created and extended.   The very word "extended" is used in connection with the lien.   (2) Priority is given to municipal liens over other liens to the evident impairment of the latter.   (3) A radical change is made in the rules of evidence.   Under this act registered municipal claims shall be prima facie evidence of the amount of the same being due and of all matters therein set forth.   (5) The effect of judicial sales of real estate is prescribed.   (6) This act, with all its double benefits, is confined to cities of the third class only.

What is there peculiar about a municipal lien that a law should be passed for cities of the third class on this subject? It is not one of the subjects as to which classification is legitimate : Scowden's Ap., 96 Pa. 425 ; Scranton School District's Ap., 113 Pa. 176 ; Scranton v. Silkman, 113 Pa. 191 ; McCarthy v. Com., 110 Pa. 243 ; Morrison v. Bachert, 112 Pa. 322 ; Phila. v. Haddington Church, 115 Pa. 291 ; Davis v. Clark, 106 Pa. 377 ; Weinman v. Railway Co., 118 Pa. 192 ; Ayars' Ap., 122 Pa. 266 ; Ruan Street, 132 Pa. 257 ; Com. v. Reynolds, 137 Pa. 389 ; Wyoming Street, 137 Pa. 494 ; Pittsburgh's Petition, 138 Pa. 401 ; Van Riper v. Parsons, 40 N. J. L. 8.

OPINION BY MR. JUSTICE WILLIAMS, April 11, 1892 :

The municipal lien, on which the writ of scire facias in this case issued, was entered for the cost of paving Adams avenue along the front of defendant's property.   The paving of this avenue was done under an ordinance, approved Sept. 4, 1889, which provided for assessing the cost of the work on the property along the street according to the foot-front rule.   The assessment made upon the defendant's property was not paid, and the lien now under consideration was filed in due form, in favor of the city, for the amount of the unpaid assessment. When the defendant was served with the scire facias he ap-

peared and made an affidavit of defence, alleging that there ought to be no recovery against him, because the ordinance under which the work was done was invalid.   The reason given was that the act of May 23, 1889, and "especially the 15th article thereof, is a local and special law, and is, therefore, unconstitutional, and the said ordinance and all proceedings had thereunder are void and of no effect."   The city then moved for judgment for want of a sufficient affidavit of defence.   This raised the question of the constitutionality of the 15th article of the act of 1889, and the learned judge of the court below held that the article in question was unconstitutional, and that, in consequence, the ordinance and all proceedings under it were without authority of law and void.   The reasons on which this conclusion rests, as gathered from the opinion, may be stated thus:

1. The act of 1889 is local, as it is applicable to only one class of cities.

2. It creates and extends liens in cities of one class only.

3. It changes the practice in courts of law held in counties that contain a city of the third class as to a particular class of cases.

4. It changes the rules of evidence in such courts, so far as they relate to municipal liens.

5. It gives to a sheriff's sale, upon a municipal lien in a city of the third class, an effect which it does not have elsewhere.

These are serious charges against the act of 1889, and if they appear, upon an examination of the 15th article of the act, to be well founded, the court below was right in the conclusion it reached.   Turning, then, to the provisions of the act, we find they are intended to provide a system for the government of cities of the third class.   They embrace all the members of the class, and furnish the same machinery and modes of procedure for all.   Classification of cities for purposes of municipal government was recognized as valid in Wheeler v. The City, 77 Pa. 338.   Laws limited in their operation to a single class of cities are not, therefore, within the constitutional prohibition of local legislation, if they relate to matters that are connected with the organization or the administration of the city government, or the regulation of municipal affairs:  Ruan Street, 132 Pa. 257.   If such laws relate to other

subjects not within the purposes of classification, they fall within the prohibition and are void: Scowden's Ap., 96 Pa. 425; Davis v. Clark, 106 Pa. 377; M'Carthy v. Com., 110 Pa. 243; Weinman v. Ry., 118 Pa. 192; Wyoming St., 137 Pa. 494. This is, therefore, the test by which to determine the validity of a law relating to a given class of cities. If it relates to subjects of municipal concern only, it is constitutional, because operating upon all the members of the class it is a general law. If it relates to subjects of a general, as distinguished from a municipal, character, it is local, and therefore invalid, although it may embrace all the members of the class. Tried by this test, the act of 1889 is, in its character and effect, a general law, and must be regarded as constitutional, except as to such particular provisions, if any, as transcend the limits imposed by its title, or fail to bear the test to which we have referred. The subject of the grading and the paving of streets is clearly and exclusively one for municipal control. The power to collect the cost of the work so done, by any appropriate form of taxation, is a municipal power. In the case of an original pavement, the right to assess the cost of the work on property along the street paved was possessed by the cities of the commonwealth, under their several charters, before the constitution of 1873 was adopted, or any attempt at classification, as now understood, had been made. The mere fact of classification did not strip the classified cities of their powers. It made the machinery for the exercise of such powers uniform for all the members of the class, but it left the government of each city as it found it, except in such particulars as change was necessary in order to adjust it to the class into which it came: Com. v. Wyman, 137 Pa. 508. The act of 1889 regulates the manner in which the power to pave streets, and collect the cost thereof, shall be exercised, and authorizes the assessment of the cost upon property fronting on the street, according to the extent of the frontage. So far the act is certainly free from objection, and the work done, and the assessment of its cost on the defendant's property, are regular.

But some provision must be made for the collection of the assessment, and the act authorizes the entry of a municipal lien for the amount, if not paid when due. This is the method provided for collecting similar assessments in cities of the first

and of the second classes. It is not the introduction of a new, but an adoption of an old, and well understood, mode of procedure to secure the city, and give notice of the incumbrance. So much of this article as gives a lien for ten years, without a revival, may be open to criticism, but that question is not raised on this record. For the usual period fixed for the duration of liens, appearing by the records of the courts, this lien is certainly good, if there was authority to enter it in the first place. The amount of the lien may be collected, according to the article of the act of 1889 we are considering, in either of two ways, viz., by an action against the person of the owner, or by a writ of scire facias and a proceeding against the land bound by the lien. These are usual modes of procedure, in which the practice is well settled, and are to be pursued in the ordinary manner. When the defendant is served with the writ of scire facias, he must make an affidavit of defence, as in case of a scire facias on a mechanic's lien, a judgment, or a mortgage, or as in the case of any action brought to recover a sum of money due. If he does not do this, the statements in the claim filed are to be taken as proof prima facie of the facts stated therein, and judgment may be taken, as in any case under the affidavit of defence laws. Here, again, the established practice in the courts, in like causes, is adopted for the enforcement of the lien in favor of the city. But it is thought that the provision, which declares that a sale by the sheriff of the land bound by the lien shall be deemed a proceeding in rem, and shall vest a good title in the purchaser, is an interference with settled rules of law, and therefore unconstitutional. If this was so, it could not affect the case now before us ; our question is not with the title of a purchaser at sheriff's sale, but with the right of the city to a judgment upon the scire facias. But if the proceeding by scire facias, resulting in a sale by the sheriff, is a proceeding in rem, the fact that it is so declared in the act is of no consequence. The declaration would be, in that case, mere surplusage.

The learned judge was of opinion that this case was ruled by the Appeals of Engle et al., in re Opening of Wyoming St., 137 Pa. 494, but we do not think so. Those cases involved the validity of municipal liens, entered upon the awards of a " board of viewers." This board was appointed by the court

of common pleas of Allegheny county, but only on the nomination of the city. Its members were removable by the same court, but only on the request of the city. Their salaries were fixed by the city, and paid out of the city treasury. All claims for damages done by the entry of the city on private property were required to be submitted to them for adjustment. Their report was made, not to the court that appointed them, but to the city. The property owner who was not satisfied with their decision was required to appeal to the city, which sat as an appellate court to review and revise the awards against itself for the injury it had done its citizens by its entry on their lands, under the right of eminent domain. The judgment thus rendered by the city, in its own case, was conclusive on the citizen, unless he fled to a court of law at a rate of speed that left no dust on his feet. Having assessed the damages done by the city, the board of viewers added all costs and expenses to that total, and charged the entire amount on adjoining property as benefits, without regard to whether the improvement had conferred any benefits on the property charged or not. The measure of a lot owner's liability was, therefore, not the benefit he had received, but his share of the loss some one else had suffered. The statute under consideration in that case fell, because the board of viewers, with its powers and functions, was indispensable to the system provided by it, and the provisions relating to the board were unconstitutional.

The act of 1889 provides for the ascertainment of damages and the assessment of benefits, by a system in harmony with that in use in cities of the first and second classes. Its provisions, authorizing the filing of a municipal lien for unpaid assessments, and the collection of the amount so secured, by means of a personal action or a writ of scire facias, are not diverse from those in force in other cities, but in harmony with them. They do not change the established modes of procedure in the courts of law, or the rules of evidence. They create no new style of liens, they change no settled rule of property. The court below was, therefore, in error in holding the act to be unconstitutional, and the affidavit of defence to be sufficient.

The judgment of the court, upon the motion for judgment, is therefore reversed and set aside, and it is now ordered that

the record be remitted to the court below, with directions to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the court why such judgment should not be entered.